# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STEVEN A. ARCHIBALD,<br>　　　　　*an individual*<br><br>and<br><br>DEBORAH E. ARCHIBALD,<br>　　　　　*an individual*<br><br>　　　　Plaintiffs,<br>v.<br><br>JOHN MYERS, *an individual*<br>Serve at: 6341 E. Sunnyside Drive<br>　　　　Scottsdale, Arizona 85254<br><br>KENNETH MARG*, an individual*<br>Serve at: 8408 E. Welsh Trail<br>　　　　Scottsdale, Arizona 85258<br><br>SKYTEC SECURITY SERVICES, LLC<br>Serve at:300 Delaware Ave., Ste 210-A<br>　　　　Wilmington, Delaware 19801<br><br>NETWORK REFERRAL<br>　　　　SYSTEMS, LLC<br>Serve at: 300 Delaware Ave., Ste 210-A<br>　　　　Wilmington, Delaware 19801<br><br>SKYTEC FUNDING COMPANY, LLC<br>Serve at: 300 Delaware Ave., Ste 210-A<br>　　　　Wilmington, Delaware 19801<br><br><br>　　　　Defendants. | Case No. |

## VERIFIED COMPLAINT FOR DAMAGES

Plaintiffs Steven A. Archibald and Deborah E. Archibald ("Plaintiffs" and/or the "Archibalds") allege as follows for their various causes of action against John

Myers; Kenneth Marg; SkyTec Security Services, LLC; Network Referral Systems, LLC; and SkyTec Funding Company, LLC (sometimes collectively, the "Defendants"):

**Parties, Jurisdiction, and Venue**

1. Plaintiffs are residents of Cass County, Missouri.

2. Upon information and belief, John Myers ("Myers") is a resident of Arizona subject to service at the above-referenced address.

3. Myers is a citizen of Arizona.

4. Upon information and belief, Kenneth Marg ("Marg") is a resident of Arizona subject to service at the above-referenced address.

5. Marg is a citizen of Arizona.

6. Defendant SkyTec Security Services, LLC ("SkyTec Corporate") is a Delaware Limited Liability Company, which subsequently registered as a Foreign LLC in Arizona.

7. Defendant Network Referral Systems, LLC ("Network Referral Systems") is a Delaware Limited Liability Company.

8. Defendant SkyTec Funding Company, LLC ("SkyTec Funding") is a Delaware Limited Liability Company.

9. SkyTec Corporate, Network Referral Systems, SkyTec Funding, Myers, and Marg are sometimes collectively, the "Defendants."

10. Upon information and belief, the only members of SkyTec Corporate, Network Referral Systems, and SkyTec Funding are Myers and Marg, who are both Arizona citizens.

11. SkyTec Corporate, Network Referral Systems, and SkyTec Funding are therefore Arizona citizens.

12. This lawsuit arises from the Defendants' scheme to solicit and retain investment funds from the Plaintiffs for a non-existent entity, SkyTec Security Services of Texas, LLC ("SkyTec Texas").

13. All Counts herein arise from Defendants' tortious conduct occurring, *inter alia*, in Missouri and causing damages in Missouri to Missouri residents.

14. SkyTec Corporate through its members and agents, including Myers, made trips to Kansas City, Missouri as part of the fraudulent and negligent misrepresentations detailed herein.

15. SkyTec Corporate and its members and agents, including Myers and Marg, sent myriad correspondence regarding the Archibalds' involvement and investment in SkyTec Texas, and soliciting the Archibalds to each individually enter a Subscription Agreement with SkyTec Texas (the "Subscription Agreements").

16. SkyTec Funding and Network Referral Systems through its members and agents, including Myers, sent correspondence to the Archibalds concerning SkyTec Texas.

17. This Court therefore possesses personal jurisdiction over the Defendants.

18. Defendants have sufficient minimum contacts with Missouri such that this Court's exercise of personal jurisdiction over Defendants comports with due process.

3

19.     A substantial part of the events giving rise to Plaintiffs' claims occurred in the Western District of Missouri, and venue is proper in this Court pursuant to 28 U.S.C. §1391.

20.     Plaintiffs raise a federal question by asserting a civil action arising under federal law, namely the Securities Act of 1933 and the Securities and Exchange Act of 1934.

21.     Plaintiffs are citizens of Missouri, and Defendants are citizens of Arizona, and the amount in controversy plus reasonable attorneys' fees expended and to be incurred to prosecute this claim plus punitive damages will exceed $75,000.

22.     As such, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

### Facts Common to All Counts

*Myers and Marg Solicit Investments for a Nonexistent Entity*

23.     Myers and Marg (the "Promoters") operated a series of businesses related to the sale, installation, and marketing of security systems, including SkyTec Corporate and Network Referral Systems.

24.     The Promoters sought to obtain investment funds and loans by fabricating additional entities with regional focuses, claiming they would exist and operate under SkyTec Corporate; one such fabricated entity was SkyTec Texas.

25.     The Promoters and SkyTec Corporate contracted with Daniel Madasz ("Madasz") to assist in raising funds for SkyTec Texas.

26.     In December 2013, Madasz introduced a family member, Steven Archibald, to Myers and Marg.

4

27.     As a part of the Promoters' and SkyTec Corporate's scheme to lend validity to SkyTec Texas, Myers represented himself and Marg as experienced and successful businessmen with a proven method of developing regional offices supported by SkyTec Corporate.

28.     The Promoters and SkyTec Corporate solicited the Archibalds to invest in SkyTec Texas, promising a quick and profitable return on investment by buying into an existing turn-key entity.

29.     The Promoters and SkyTec Corporate represented that the Archibalds would become five percent (5%) shareholders in SkyTec Texas.

30.     On December 31, 2013, Madasz forwarded to the Archibalds a December 30, 2013, e-mail from Marg encouraging the Archibalds to invest in an equity position quickly to take advantage of "the signing of the H-E-B deal," and provided wire transfer information.

***SkyTec Corporate and the Promoters Issue Profit Projections***

31.     On January 5, 2014, Madasz forwarded to the Archibalds a January 2, 2014, Regional Business Opportunity Overview issued by SkyTec Corporate, Myers, and Marg, promoting investment in the regional businesses, including SkyTec Texas. This Regional Business Opportunity Overview asserted, among other things:

    a.  Business will be generated in each region through:

        i.  "[a]n incredibly powerful nationwide sales organization can be assembled very quickly;"

        ii.  An existing partnership with "one of the world's leading experts" for marketing automation; and

  iii. A call center "within the Scottsdale Arizona headquarters."

 b. Projected revenues for SkyTec Texas would create $83,000 gross profit per month, or $4,150 profit per month to a five percent (5%) shareholder;

 c. Said projected revenues does not include "any factor for commercial business" and "is a conservative number;" and

 d. SkyTec Corporate will support and guide each regional office to sell commercial projects.

32. Upon information and belief, the "conservative numbers" SkyTec Corporate and the Promoters provided for revenue and profits for SkyTec Texas had no actual basis, nor did SkyTec Corporate and the Promoters ever intend to create, support, or market SkyTec Texas; rather the models and numbers were utilized as a part of the Promoters' and SkyTec Corporate's scheme to solicit investment from the Archibalds.

### SkyTec Corporate and the Promoters Claim SkyTec Texas is Formed

33. The Promoters and SkyTec Corporate provided the Archibalds documents meant to demonstrate that SkyTec Texas existed.

34. On January 20, 2014, The Promoters and SkyTec Corporate, through Madasz, produced a Limited Liability Company Agreement for SkyTec Security of Texas, LLC[1], executed on January 1, 2014 (the "SkyTec Texas LLC Agreement"), which, among other things:

---

[1] The Subscription Agreements and Sale Agreement (defined hereafter) both reference SkyTec Security **Services** of Texas, LLC (emphasis added).

a. Identifies SkyTec Security of Texas, LLC as a Delaware Limited Liability Company;

b. States SkyTec Security of Texas, LLC has been formed;

c. States SkyTec Security of Texas, LLC can carry on a lawful business;

d. Allocates any gain or loss to the SkyTec Security of Texas, LLC members;

e. Requires SkyTec Security of Texas, LLC to "maintain complete accounting records of the Company's business, including a full and accurate record of each Company transaction. The records must be kept at the Company's principal executive office and must be open to inspection and copying by Members;"

f. Requires SkyTec Security of Texas, LLC keep a "certificate of formation of the Company;" and

g. Provides that "[a]ll funds of the Company must be deposited in one or more bank accounts in the name of [SkyTec Security of Texas, LLC]."

35.    Neither SkyTec Security Services of Texas, LLC nor SkyTec Security of Texas, LLC is registered with the Delaware Department of State, Division of Corporations.

36.    Upon information and belief, SkyTec Texas has never existed in any form.

7

**The Promoters and SkyTec Corporate Claim Forthcoming Profits and "Ultra Conservative" Projections will Pay Back the Archibalds in Three Years**

37.     On January 21, 2014, Myers sent an e-mail asserting that SkyTec Texas had, in Texas, a grocery chain "job [which] is projected to result in a profit of over $1 million."

38.     Myers stated the grocery project would yield "over $50,000 in profit to the 5% shareholder."

39.     Upon information and belief, the Promoters and SkyTec Corporate never had any actual projections concerning an alleged grocery project, and promised the profit in furtherance of their scheme.

40.     Myers also asserted that the Promoters and SkyTec Corporate were being "ultra conservative" with their projections, providing "realistic" numbers which would pay back the Archibalds investment in three (3) years.

41.     Upon information and belief, the Promoters and SkyTec Corporate had no good faith basis for their projects, nor did they ever intend to pay back the Archibalds their investment within three (3) years.

**The Archibalds Provide an Initial Investment in SkyTec Texas**

42.     To lend an air of legitimacy to the fraudulent investment process, the Promoters created Subscription Agreements and requested the Archibalds to sign such documentation.

43.     On or about January 24, 2014, Plaintiffs each individually entered into separate Subscription Agreements with SkyTec Texas.

8

44.     The Subscription Agreements purport to provide to each Plaintiff a membership interest in SkyTec Texas in exchange for a capital contribution.

45.     Steven Archibald, through a self-directed IRA, paid $60,506.47 to SkyTec Texas as a capital commitment.

46.     Deborah Archibald, through a self-directed IRA, paid $45,348.00 to SkyTec Texas as a capital commitment.

47.     The Subscription Agreements were signed by Marg as President of SkyTec Texas.

48.     Both Plaintiffs provided information in these forms which clearly demonstrates that Plaintiffs fail to qualify as accredited investors.

49.     The Promoters knew Plaintiffs were common people without the special knowledge of an accredited investor which could begin to level the playing field concerning the information advantage the Promoters held over the Plaintiffs.

50.     The capital commitments of $60,506.47 and $45,348.00 were sent as a wire to SkyTec Corporate.

51.     Upon information and belief, these funds were never relayed to SkyTec Texas, nor used for any purpose to grow SkyTec Texas into a profit-generating enterprise which could ever pay distributions to the Archibalds.

52.     On or about January 24, 2014, Deborah Archibald and SkyTec Texas entered into a Sale of LLC Interest Agreement (the "Sale Agreement").

53.     The Sale Agreement provided a .46 percent interest in the capital and profits of SkyTec Texas in exchange for a purchase price of $10,812.53.

9

54. Myers signed the Sale Agreement for SkyTec Texas.

55. The Sale Agreement asserted, among other things:

   a. SkyTec Texas had assets;

   b. SkyTec Texas carried insurance on its assets and business still in full force and effect;

   c. SkyTec Texas was not in default under any law or regulation; and

   d. SkyTec Texas "will cooperate and use its best efforts to have the present Members and employees . . . furnish[] information, evidence, testimony, and other assistance."

56. Upon information and belief, and as discussed more fully herein, each of those assertions was untrue, and were made by the Promoters and SkyTec Corporate as a part of their fraudulent scheme.

***The Promoters and SkyTec Corporate Make Misrepresentations, False Statements, and Fraudulent Statements in Aid of their Scheme to Retain the Archibalds' Investment, Solicit Further Investment, and Conceal Fraud***

57. On or about February 27, 2014, Myers met with the Plaintiffs for lunch in downtown Kansas City to share his vision for the company and address ways the Plaintiffs as owners of SkyTec Texas could help to grow the business.

58. Myers reaffirmed the Plaintiffs investment in SkyTec Texas, stated things were developing well and referenced Network Referral Systems as an avenue of generating revenue for SkyTec Texas and for the Archibalds individually.

59. A February 27, 2014, check for $704.00 from the Archibalds to SkyTec Texas as the named recipient was deposited and posted on March 3, 2014.

60. On or about May 21, 2014, SkyTec Corporate, Myers, and Marg issued a Regional Business Summary, addressing the status of the regional businesses, including SkyTec Texas. This Regional Business Summary asserted, among other things:

    e. The Promoters own SkyTec Corporate;

    f. SkyTec Corporate owns fifty-one percent (51%) of any regional office;

    g. A program to provide leads to regional offices has been verified;

    h. SkyTec Corporate would engage in marketing to benefit the regional offices;

    i. SkyTec Corporate already had in place the operations to support the regional offices;

    j. "[M]eaningful numbers" would be generated in 60-90 days, with an emphasis on Texas as one of four focused markets;

    k. Network Referral Systems was a recipient of SkyTec Corporate's funds and a key part of the pro forma projections;

    l. A funding company would be shortly formed, and investors in regional offices would be given the chance to invest in the funding company;

    m. "A complete pro forma for SkyTec Funding" would be developed; and

    n. The Promoters and SkyTec Corporate had created valid pro forma revenue models for regional offices.

61.     Upon information and belief, the estimate of 60-90 days for "generating meaningful numbers," and the pro forma models for the regional offices lack any real foundation, and were utilized as a part of the Promoters' and SkyTec Corporate's scheme to solicit and retain investments.

62.     Upon information and belief, SkyTec Corporate, Network Referral Systems, and SkyTec Funding have provided no meaningful benefit to SkyTec Texas.

63.     During the rest of 2014, the Promoters and SkyTec Corporate represented to Madasz and to the Archibalds that SkyTec Texas was profitable, but the reason no distributions had been paid was that other claims were being settled first.

64.     Upon information and belief, SkyTec Texas was not profitable and no claims against SkyTec Texas existed; rather, distributions were not made because the Promoters and SkyTec Corporate were paying themselves from the Archibalds investment.

65.     At the end of 2014, when the Archibalds again inquired about distributions, the Promoters proposed converting the Archibalds' position to a note, to receive interest payments in lieu of distribution payments.

66.     As the Archibalds persisted in seeking to understand why their investment was not yielding profits, the Promoters agreed to have a conference call to placate the Archibalds.

67.     On February 7, 2015, the Promoters held a conference call with the Archibalds and Madasz, in which the Promoters acknowledged profits were coming

slower than anticipated, but provided sufficient answers, explanations, and assurances over the nearly one-hour call to keep stringing along the Archibalds.

68. On February 10, 2015, Marg e-mailed the Archibalds asserting that "[w]e will be paying interest on the money we owe you at an APR rate of 15%."

69. On February 17, 2015, the Archibalds requested 2014 K-1 tax forms so the Archibalds could complete their own 2014 tax returns.

70. That same day, Marg responded that "[a]s there was no loss or gain from the entity and we are converting that position to a note and paying it off, we were not planning on K-1's."

71. For the rest of 2015, Plaintiffs were under the impression that the Promoters were growing SkyTec Texas and that interest or distributions would be forthcoming as the business grew.

72. Madasz had regular calls with the Promoters who continually provided assurances and explanations which Madasz relayed to the Archibalds.

73. On or about April 7, 2016, Plaintiffs informed Madasz of Plaintiffs' desire to convert their ownership position to a note, either collateralized or with a personal guaranty; Plaintiffs specifically requested Myers write to them "outlining what the plan is to pay-off the note."

74. The Promoters and SkyTec Corporate never provided the Archibalds financial statements related to an ownership interest in SkyTec Texas or a note position in SkyTec Texas.

***The Archibalds Discover SkyTec Texas does not Exist***

75.     For years, the Promoters and SkyTec Corporate repeatedly expressed optimism for the ultimate outcome of investing in SkyTec Texas and asserted positive, albeit slow, progress.

76.     Upon information and belief, with the intent and for the purpose of defrauding the Archibalds, the Promoters and SkyTec Corporate devised and carried out a scheme that included utilizing the lies and misrepresentations averred herein to retain the Archibalds' investment in a non-existent entity.

77.     On March 24, 2017, Steven Archibald sent an e-mail to Madasz looking for a plan from SkyTec Texas on how to make the Archibalds whole.

78.     In this same e-mail, Steven Archibald referenced a postponed visit by Myers to Kansas City to discuss making good on investor obligations, and wondered when this explanatory visit would be rescheduled.

79.     On or about March 28, 2017, Myers spoke with Madasz, and expressed a desire to provide updates to the Plaintiffs concerning the SkyTec entity in which the Plaintiffs were owners, which entity the Plaintiffs had been told for three years was SkyTec Texas.

80.     Myers indicated he would be "pulling something together for equity investors," but no such reporting or documentation was provided to the Archibalds.

81.     On April 3, 2017, Myers, Madasz, and the Archibalds participated in a conference call where the Archibalds requested 1) company books and financial records for either SkyTec Texas or of the SkyTec Corporate parent company; 2) a

statement of good standing for SkyTec Texas; and 3) plans to provide remuneration for the Archibalds investment, either as a repayment plan, through distributions, or an outright purchase of the Archibalds' interest.

82. Myers stated he was working to get the company books and financial records to provide to the Archibalds; to date Myers has never provided any such records.

83. Myers stated he would obtain and provide the Archibalds a statement of good standing for SkyTec Texas; to date Myers has never provided any such statement.

84. Myers stated that once the books were squared away he would present options for both equity owners and note holders.

85. During this same call, Myers stated that the entity the Archibalds had invested in essentially had an "undocumented loan" to SkyTec Corporate.

86. During this same call, Myers requested a referral from the Archibalds of an outside accountant who could assist him in cleaning up and preparing the company books and financial records.

87. In response to this request, Deborah Archibald provided a recommendation to Myers of Michelle Wood with Mergix Business Solutions, LLC ("Wood") to help organize and prepare the company books and financial records.

88. Wood required access to Quickbooks to even provide an initial assessment of the work to be done and likely costs; the Promoters and SkyTec Corporate never provided any such access.

15

**The Defendants Knew SkyTec Texas Did Not Exist and Never Intended to Form SkyTec Texas**

89.     Upon information and belief, the Promoters and SkyTec Corporate employed a scheme that fraudulently solicited and accepted the Archibalds' investment knowing that SkyTec Texas did not exist.

90.     Upon information and belief, the Archibalds' investment never funded SkyTec Texas, but rather remained with SkyTec Corporate, to its benefit, and to the benefit of the Promoters, both as members of SkyTec Corporate and in their individual capacity.

91.     Upon information and belief, the Promoters and SkyTec Corporate each participated in this scheme, and benefited from participation in the same.

92.     Upon information and belief, the Promoters engaged in self-dealing and fraudulent transfer and retention of the Archibalds' investment, even though the Promoters were under fiduciary and statutory obligations to act in good faith and to refrain from self-dealing.

93.     Upon information and belief, Network Referral Systems and SkyTec Funding, through their members, managers, and agents, willingly participated in the Promoters' and SkyTec Corporate's scheme.

94.     Upon information and belief, Network Referral Systems and SkyTec Funding, and their members and managers, benefited from their participation in the Promoters' and SkyTec Corporate's scheme.

95.     Upon information and belief, the Promoters likely have interests in the Network Referral Systems and SkyTec Funding, and the Promoters failed to disclose

to the Archibalds such interests even though the Promoters were under fiduciary and statutory obligations to notify the Archibalds of any conflicts of interest, to disclose any self-interest, and to refrain from self-dealing.

96.     The Archibalds never received any distributions from SkyTec Texas, nor did they ever receive any interest from the proposed conversion to a note of fifteen percent (15%) APR.

97.     The Promoters and SkyTec Corporate, prior to entering the Subscription Agreements, lied and made false representations, as more fully set out herein, to induce Plaintiffs to sign the Subscription Agreements.

98.     After the Plaintiffs had signed the Subscription Agreements, the Promoters and SkyTec Corporate continued to lie and make false representations, as more fully set out herein, to retain the Archibalds' fraudulently procured investment and to solicit additional investment from Deborah Archibald through the Sale Agreement.

99.     Upon information and belief, the Defendants knew SkyTec Texas did not exist, and sought to conceal the fraudulent entity and retain the Archibalds' investment by making the misrepresentations, false statements, and fraudulent statements detailed herein.

## <u>Count I</u>
(Fraudulent Misrepresentation against the Promoters and SkyTec Corporate)

100.     Plaintiffs restate and incorporate herein their allegations set forth in paragraphs 1 through 99.

101.    The    Promoters    and    SkyTec    Corporate,    made    several    false representations to the Archibalds to induce them to sign the Subscription Agreements and    the    Sale    Agreement    and    transmit    their    investments,    including,    without limitation (collectively, the "Inducement Representations"):

a.    The SkyTec Texas LLC Agreement

| | |
|---|---|
| **Who** | SkyTec Corporate, Marg, and Myers as issuers and authors, and Marg and Myers individually as signing members |
| **What** | Prepared and produced a the SkyTec Texas LLC Agreement, stating, ratifying, and confirming, among other things 1) SkyTec Texas existed and had been formed as a Delaware Limited Liability Company; 2) SkyTec Texas could lawfully operate; 3) SkyTec members, including the Promoters, would keep or cause SkyTec Texas to keep up to six years of tax returns and reports; 4) SkyTec members, including the Promoters, would keep or cause SkyTec Texas to keep SkyTec Texas' certificate of formation; 5) SkyTec Texas would maintain complete accounting records, including a full and accurate record of each SkyTec Texas transaction; 6) such records were kept at SkyTec Texas' office; 7) such records were open to inspection by all members; 8) losses and gains would be allocated to SkyTec Texas members; and 9) all SkyTec Texas funds would be deposited in bank accounts in the name of SkyTec Texas |
| **Where** | The SkyTec Texas LLC Agreement and e-mail were received by the Archibalds in the Kansas City, Missouri area. |
| **When** | The SkyTec Texas LLC Agreement was signed January 1, 2014, but was sent at a later date; at the latest, the Archibalds received the SkyTec Texas LLC Agreement on January 20, 2014 |
| **How** | SkyTec Corporate and the Promoters transmitted the SkyTec Texas LLC Agreement to the Archibalds by sending it as an e-mail attachment to Madasz, who then forwarded the e-mail to the Archibalds |

b. E-mail Assertions of Projects and Profits

**Who**    (1) Marg as author of a December 30, 2013, e-mail; (2) Myers as author of January 20, 2014, e-mail; (3) Myers as author of January 21, 2014, e-mail

**What**    (1) Marg encouraged the Archibalds to invest in an equity position quickly to take advantage of "the signing of the H-E-B deal;" (2) Myers asserted that the Archibalds would be a five percent (5%) shareholder in SkyTec Texas, that SkyTec Corporate and Network Referral Systems invested over $250,000.00 in aid of launching SkyTec Texas, that SkyTec Texas would have a physical office, and that SkyTec Texas had no debt; (3) Myers asserted SkyTec Texas had a grocery project with an expected $1,000,000.00 profit which would yield over $50,000.00 in profit to the Archibalds and stated "ultra conservative" and "realistic" numbers would pay back the Archibalds investment in three years

**When**    As set out in part above, (1) December 30, 2013, e-mail; (2) January 20, 2014, e-mail; (3) January 21, 2014

**Where**    All three e-mails were received by the Archibalds in the Kansas City, Missouri area.

**How**    (1) sent as an e-mail to Madasz, who then forwarded the message to the Archibalds; (2) in response to concerns from Deborah Archibald, Myers sent an e-mail to Madasz, who then forwarded the message to the Archibalds; (3) in further response to concerns from Deborah Archibald, Myers sent an e-mail to Madasz, who then forwarded the message to the Archibalds

c. The Sale Agreement

**Who**    (1) Marg as author of January 20, 2014, e-mail containing the Sale Agreement; (2) upon information and belief, Marg and Myers as authors of the Sale Agreement itself; (3) Myers as signer of the Sale Agreement

**What**    (1) Marg produced the Sale Agreement and ratified that SkyTec Texas existed; (2) Marg and Myers asserted SkyTec

Texas had assets, carried insurance still in full force and effect, was subject to federal and state securities laws, was not in default under any law or regulation, had no claims or suits filed or threatened against it, and would cooperate and use its best efforts to have members and employees furnish information to Deborah Archibald; (3) Myers ratified the preceding and that SkyTec Texas existed

**Where**    The e-mail and the Sale Agreement were received by the Archibalds in the Kansas City, Missouri area.

**When**    As set forth in part above, (1) January 20, 2014; (2) upon information and belief, between December 30, 2013, and January 20, 2014; (3) upon information and belief, between January 21, 2014, and January 24, 2014

**How**    All three communications were sent by e-mail to Madasz, who transmitted the information to the Archibalds

102.   The Promoters and SkyTec Corporate, made several false representations to the Archibalds after the Archibalds signed the Subscription Agreements and the Sale Agreement to conceal a fraudulent scheme and delay the Archibalds seeking recovery of their investment, including, without limitation (collectively, the "Concealment Representations""):

a.    Kansas City Meeting and Coverage Check

**Who**    (1) Myers to the Archibalds at lunch in Kansas City, Missouri; (2) upon information and belief, SkyTec Corporate, Marg, and Myers

**What**    (1) Myers and the Archibalds signed slightly modified Subscription Agreements based on minor numerical differences from the original purchases, and Myers accepted a check for $704.00 from the Archibalds to SkyTec Texas as the named recipient; Myers ratified and confirmed the existence of SkyTec Texas, that it was developing well, that Plaintiffs had invested in that specific entity, and stated that Network Referral Systems would help generate revenue for SkyTec Texas and for the

Archibalds individually (2) SkyTec Corporate, Marg, and/or Myers deposited a check addressed to SkyTec Texas, thereby representing that SkyTec Texas was capable of receiving and depositing a check in its own name to a bank account it held

**Where**    (1) A business lunch in Kansas City, Missouri; (2) the check was collected from the Archibalds in Kansas City, Missouri, and upon information and belief, was deposited with a bank in Scottsdale, Arizona

**When**    (1) February 27, 2014, over the course of a long lunch meeting that ran over an hour; (2) the check was deposited on or after February 27, 2014, and posted on March 3, 2014

**How**    (1) In person, Myers had a lengthy discussion with the Archibalds sharing his vision for the future of SkyTec Texas; (2) upon information and belief, Myers flew back to Arizona with the check, and then either Myers or Marg deposited it in a SkyTec Corporate account

  b.  Regional Business Summary

**Who**    SkyTec Corporate, Marg, and Myers as Issuers

**What**    SkyTec Corporate, Marg, and Myers addressed the status of regional offices, including SkyTec Texas, and asserted: SkyTec Corporate owned fifty-one percent (51%) of any regional office; a program to provide leads to regional offices has been verified; SkyTec Corporate would engage in marketing to benefit the regional offices; SkyTec Corporate already had in place the operations to support the regional offices; "meaningful numbers" would be generated in 60-90 days, with an emphasis on Texas as one of four focused markets; Network Referral Systems was a recipient of SkyTec Corporate's funds and a key part of the pro forma projections; a funding company would be shortly formed, and investors in regional offices would be given the chance to invest in the funding company; "[a] complete pro forma for SkyTec Funding" would be developed; and the Promoters and SkyTec Corporate had created valid pro forma revenue models for regional offices

| **Where** | The Regional Business Summary was received by the Archibalds in the Kansas City, Missouri area. |
|---|---|
| **When** | The Regional Business Summary is dated May 21, 2014, and upon information and belief, it was transmitted to the Archibalds shortly thereafter |
| **How** | Upon information and belief, the Regional Business Summary was sent by SkyTec Corporate, Marg, and Myers to Madasz via e-mail, who then shared it with the Archibalds either by e-mail or in person |

c. Throughout 2014, Madasz would relay information from the Promoters to the Archibalds that SkyTec Texas was developing well and generating revenue;

d. In 2014, Madasz was told by the Promoters that SkyTec Texas was profitable, but no distributions had been paid as other claims were being settled first, and Madasz was directed to share this message with the Archibalds to allay their concerns;

e. Profits Slow to Materialize

| **Who** | (1) Marg and Myers to the Archibalds; (2) Marg and Myers to the Archibalds; (3) Marg as author of February 10, 2015, e-mail; (4) Marg as author of February 17, 2015, e-mail |
|---|---|
| **What** | (1) Marg and Myers asserted that if distributions to the Archibalds were not forthcoming, SkyTec Texas was still financially healthy enough to pay the fees the Archibalds were incurring through their self-directed IRAs if their equity position was converted to a note; (2) Marg and Myers affirmed that SkyTec Texas did exist, and acknowledged profits were coming slower than anticipated but reasserted that the Archibalds would, with time, be paid back through distributions or interest for their investment in SkyTec Texas; (3) Marg asserted "[w]e will be paying interest on the money we owe you at an APR rate |

of 15%;" (4) Marg asserted no tax financial records were required as SkyTec Texas had no loss or gain

**Where**      (1) The e-mail was received by the Archibalds in the Kansas City, Missouri area; (2) a conference call took place between Marg and Myers in Scottsdale, Arizona, and the Archibalds in Kansas City, Missouri; (3) the e-mail was received by the Archibalds in the Kansas City, Missouri area; (4) the e-mail was received by the Archibalds in the Kansas City, Missouri area

**When**      As set forth in part above, (1) Dec. 18, 2014; (2) a conference call of approximately one hour on February 7, 2015; (3) February 10, 2015; (4) February 17, 2015

**How**      As set forth in part above, (1) during the course of a phone call initiated by the Archibalds inquiring about the status of distributions; (2) by conference call between the parties; (3) Marg sent the e-mail directly to the Archibalds; (4) Marg sent the e-mail strictly to Deborah Archibald

    f.    Throughout 2015 and 2016, Madasz had regular calls with the Promoters who continually provided false assurances and explanations that SkyTec Texas was growing and that distributions or interest would be forthcoming to the Archibalds, which misrepresentations the Promoters intended for Madasz to relay to the Archibalds;

    g.    In the spring of 2017, Myers scheduled and then postponed a visit to Kansas City to discuss making good on investors' obligations;

    h.    On or about March 28, 2017, Myers spoke with Madasz, and expressed a desire to provide updates to the Archibalds concerning SkyTec Texas;

    i.    2017 Conference Call Concerning Financials

| | |
|---|---|
| **Who** | Myers to the Archibalds |
| **What** | Myers promised the Archibalds that he would promptly provide company books and financial records for either SkyTec Texas or SkyTec Corporate, as well as a statement of good standing for SkyTec Texas; Myers further asserted he would create plans to provide remuneration for the Archibalds investment, either as a repayment plan, through distributions, or an outright purchase of the Archibalds' interest; Myers also asserted that an "undocumented loan" existed from SkyTec Texas to SkyTec Corporate, and said he would use a recommended bookkeeper to clean up company books and get them up to date |
| **Where** | A conference call took place between Marg and Myers in Scottsdale, Arizona, and the Archibalds in Kansas City, Missouri; |
| **When** | April 3, 2017; upon information and belief, the call lasted less than an hour |
| **How** | As stated above, a conference call between Myers and the Archibalds |

j. On April 4, 2017, Myers sent an e-mail to the Archibalds which asserted that Myers "thought I had the Skytec [sic] Texas stuff on my computer but have been looking and can't seem to locate it."

103. The Inducement Representations and the Concealment Representations (collectively the "False Representations"), including, but not limited to, SkyTec Texas' existence, good standing as an entity, profitability, projects in the pipeline, and maintaining of company books, were material to the Archibalds' decisions in entering the Subscription Agreements and the Sale Agreement, and leaving their investment in SkyTec Texas.

104.    At the time they made the False Representations, the Promoters and SkyTec Corporate knew the statements were false or were ignorant of the truth, and were well aware of the effect of these False Representations upon which the Archibalds relied in acting.

105.    The Promoters and SkyTec Corporate communicated none of these material facts, leaving the Archibalds with precisely the misimpression the Promoters intended to foster.

106.    The Promoters' and SkyTec Corporate's False Representations were made knowing they were false and misleading, orchestrated to deceive.

107.    The Promoters asserted that SkyTec Texas' profits were being paid to settle other claims, but, upon information and belief, this was a lie meant to cover up the fact that the Promoters and SkyTec Corporate had retained the investment and never created SkyTec Texas.

108.    The Archibalds were not aware of the falsity of the False Representations at least until the Spring of 2017.

109.    The Promoters and SkyTec Corporate held themselves out as experienced in legally and profitably developing regional offices, including having invested over $250,000.00 to aid in the success of SkyTec Texas.

110.    The Promoters claimed to operate companies in various industries including security installation and sales, and claimed to have founded, operated, and sold successful companies.

111. The Archibalds, as unsophisticated investors, had the right to rely on the False Representations as being true.

112. The Archibalds' reliance was also based on Defendants' claimed experience, expertise, and industry contacts.

113. Such reliance was reasonable under the circumstances in that the Promoters and SkyTec Corporate had superior knowledge regarding SkyTec Texas' true existence, financial projections, and financial status given the Promoters' and SkyTec Corporate's apparent experience and expertise.

114. The False Representations were clearly designed to convince the Archibalds to invest, as the Promoters and SkyTec Corporate said whatever it might take to get the Archibalds to invest, regardless of the truth of those statements.

115. The Promoters and SkyTec Corporate falsely represented and failed to disclose material information to induce the Archibalds to invest and sign the Subscription Agreements and Sale Agreement.

116. By relying on the False Representations and investing in SkyTec Texas, the Archibalds suffered damage, including the loss of their investment, loss of distributions or interest, and substantial transaction costs incurred due to their investment.

117. The Archibalds also relied on the Promoters' and SkyTec Corporate's representations when choosing to remain investors in SkyTec Texas.

118. The Promoters and SkyTec Corporate intended to deceive the Archibalds.

119.    The Archibalds acted in reliance on the truth of the representations and were justified in relying on the representations.

120.    The Promoters' and SkyTec Corporate's failure to organize and operate SkyTec Texas has dramatically reduced any potential value of the Archibalds' interest in SkyTec Texas.

121.    The Promoters and SkyTec Corporate made the False Representations intentionally, maliciously, and with wanton disregard and indifference for the Archibalds' rights.

WHEREFORE, Plaintiffs request that this Court enter judgment for Plaintiffs and against Defendants Marg, Myers, and SkyTec Corporate for damages in an amount to be established by the evidence and in excess of $75,000; for punitive damages which are fair and reasonable; for pre- and post-judgment interest as provided by law; for Plaintiffs' costs and expenses incurred herein; and for any and all other relief that this Court deems just and proper.

## Count II
(Negligent Misrepresentation against the Promoters and SkyTec Corporate)

122.    Plaintiffs restate and incorporate herein their allegations set forth in paragraphs 1 through 121.

123.    Prior to the Archibalds signing the Subscription Agreements and Sale Agreement and while remaining invested in SkyTec Texas, the Promoters and SkyTec Corporate made the False Representations to the Archibalds, and did so in the Promoters and SkyTec Corporate ordinary course of business.

124.   The Promoters and SkyTec Corporate failed to exercise reasonable care in ensuring the information provided to the Archibalds was accurate.

125.   In fact, upon information and belief, the Promoters and SkyTec Corporate intentionally provided the False Statements to the Archibalds to guide them as investors in the business transactions detailed herein.

126.   The Promoters and SkyTec Corporate also intentionally provided the Regional Business Summary to a limited group of current and potential investors, including the Archibalds, to guide them as to investments made in regional entities, including SkyTec Texas.

127.   As set forth above, the Archibalds relied on these statements in entering the Subscription Agreements and Sale Agreement.

128.   As set forth above, the Archibalds' reliance was based on Defendants' claimed experience, expertise, and industry contacts.

129.   Such reliance was reasonable under the circumstances in that the Promoters and SkyTec Corporate had superior knowledge regarding SkyTec Texas' true existence, financial projections, and financial status given the Promoters' and SkyTec Corporate's apparent experience and expertise.

130.   The False Representations were clearly designed to convince the Archibalds to invest, as the Promoters and SkyTec Corporate said whatever it might take to get the Archibalds to invest, regardless of the truth of those statements.

131.   By relying on the False Representations and investing in SkyTec Texas, the Archibalds suffered damage, including the loss of their investment, loss of

distributions or interest, and substantial transaction costs incurred due to their investment.

132.    The Promoters' and SkyTec Corporate's failure to organize and operate SkyTec Texas has dramatically reduced any potential value of the Archibalds' interest in SkyTec Texas.

WHEREFORE, Plaintiffs request that this Court enter judgment for Plaintiffs and against Defendants Marg, Myers, and SkyTec Corporate for damages in an amount to be established by the evidence and in excess of $75,000; for pre- and post-judgment interest as provided by law; for Plaintiffs' costs and expenses incurred herein; and for any and all other relief that this Court deems just and proper.

## Count III
(Violation of the Securities Act of 1933 and the Securities and Exchange Act of 1934
against the Promoters)

133.    Plaintiffs restate and incorporate herein their allegations set forth in paragraphs 1 through 132.

134.    The Promoters, in connection with the purchase or sale of securities, by the use of the means and instrumentalities of interstate commerce, directly and indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated as a fraud or deceit upon purchasers of securities in violation of federal

securities law, including the Securities Act of 1933 § 77q and the Securities and Exchange Act of 1934 § 78j and 17 C.F.R. § 240.10b-5.

135.   As set forth above, the Promoters established a scheme to obtain actual investments in a non-existent entity.

136.   The Promoters made the False Representations to mislead the Archibalds into investing in SkyTec Texas, and by so doing carried out a fraud and deceit upon the Archibalds.

137.   In January 2014, the Archibalds purchased interests in SkyTec Texas.

138.   The Archibalds' ownership interests were "securities" pursuant to the 1933 and 1934 Act, and the monies paid were investments in those "securities."

139.   The Archibalds were passive investors in SkyTec Texas, and relied on the efforts of the Promoters to achieve the return on their investment in SkyTec Texas.

140.   To induce the Archibalds to purchase interests in SkyTec Texas and enter the Subscription Agreements and Sale Agreement, the Promoters made material misrepresentations and false statements to the Archibalds, including but not limited to the False Representations.

141.   When the Promoters made these and other misrepresentations, they knew that SkyTec Texas did not exist and had never made a profit.

142.   The Promoters represented themselves as officers of SkyTec Texas, and as such, had a duty to disclose the information set forth above but failed to do so.

143.     As officers, the Promoters had a duty to not make representations to the Archibalds which the Promoters knew were false when the representations were made.

144.     By their actions and omissions set forth above, the Promoters intended to deceive, manipulate and/or defraud the Archibalds to purchase their interests in SkyTec Texas.

145.     In deciding to invest in SkyTec Texas, the Archibalds relied on each of the Promoter's false statements and material omissions set forth above.

146.     All of the Promoters' conduct set out herein was done with malice, reckless indifference or wanton disregard for the Archibalds' rights, and an award of punitive damages is warranted in light of the Promoters' conduct.

WHEREFORE, Plaintiffs request that this Court enter judgment for Plaintiffs and against Defendants Marg and Myers for damages in an amount to be established by the evidence and in excess of $75,000; for punitive damages which are fair and reasonable; for pre- and post-judgment interest as provided by law; for Plaintiffs' costs and expenses incurred herein including attorneys' fees; and for any and all other relief that this Court deems just and proper.

## COUNT IV
(Violation of the Missouri Securities Act of 2003 against the Promoters)

147.     Plaintiffs restate and incorporate herein their allegations set forth in paragraphs 1 through 146.

148.     The Promoters, in connection with the offer, sale or purchase of a security directly and indirectly: (a) employed devices, schemes or artifices to defraud;

31

(b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated as a fraud or deceit upon purchasers of securities in violation of Missouri Securities Act of 2003, § 409.5-501.

149.    As set forth above, the Promoters established a scheme to obtain actual investments in a non-existent entity.

150.    The Promoters made the False Representations to mislead the Archibalds into investing in SkyTec Texas, and by so doing carried out a fraud and deceit upon the Archibalds.

151.    In January 2014, the Archibalds purchased interests in SkyTec Texas.

152.    The Archibalds' ownership interests were "securities" pursuant to the 1933 and 1934 Act, and the monies paid were investments in those "securities."

153.    The Archibalds were passive investors in SkyTec Texas, and relied on the efforts of the Promoters to achieve the return on their investment in SkyTec Texas.

154.    To induce the Archibalds to purchase interests in SkyTec Texas and enter the Subscription Agreements and Sale Agreement, the Promoters made material misrepresentations and false statements to the Archibalds, including but not limited to the False Representations.

155.    When the Promoters made these and other misrepresentations, they knew that SkyTec Texas did not exist and had never made a profit.

156. The Promoters represented themselves as officers of SkyTec Texas, and as such, had a duty to disclose the information set forth above but failed to do so.

157. As officers, the Promoters had a duty to not make representations to the Archibalds which the Promoters knew were false when the representations were made.

158. By their actions and omissions set forth above, the Promoters intended to deceive, manipulate and/or defraud the Archibalds to purchase their interests in SkyTec Texas.

159. In deciding to invest in SkyTec Texas, the Archibalds relied on each of the Promoter's false statements and material omissions set forth above.

160. All of the Promoters' conduct set out herein was done with malice, reckless indifference or wanton disregard for the Archibalds' rights, and an award of punitive damages is warranted in light of the Promoters' conduct.

WHEREFORE, Plaintiffs request that this Court enter judgment for Plaintiffs and against Defendants Marg and Myers for damages in an amount to be established by the evidence and in excess of $75,000; for punitive damages which are fair and reasonable; for pre- and post-judgment interest as provided by law; for Plaintiffs' costs and expenses incurred herein including attorneys' fees; and for any and all other relief that this Court deems just and proper.

## COUNT V
(Breach of Fiduciary Duty against the Promoters as officers of SkyTec Texas)

161. Plaintiffs restate and incorporate herein their allegations set forth in paragraphs 1 through 160.

162. As set forth above, the Promoters represented themselves and acted as officers of SkyTec Texas.

163. The Archibalds executed the Subscription Agreements and the Sale Agreement.

164. The Archibalds, as members of SkyTec Texas, also benefitted from the rights provided in the SkyTec Texas Limited Liability Company Agreement.

165. The Promoters as officers of SkyTec Texas had a fiduciary duty to act in the best interest of the other members of SkyTec Texas.

166. The Promoters were under a duty to act for the benefit of SkyTec Texas in that the Promoters were required to not take actions which directly benefit the Promoters and harmed the Archibalds including, without limitation, those actions set forth herein.

167. The Archibalds placed trust in the Promoters and the Promoters exercised dominion and influence over the Archibalds and their interests in SkyTec Texas.

168. Among other things, the Promoters breached their fiduciary duties by making the False Representations, failing to develop the business, and embezzling SkyTec Texas funds.

169. By their actions and inactions, the Promoters breached their fiduciary duties to the Archibalds and as a result of the Promoters' reckless, wanton and malicious conduct, the Archibalds have been damaged.

170. The breach of the Promoters' fiduciary duties is the proximate cause of the Archibalds' damages.

171. All of the Promoters' conduct set out herein was done with malice, reckless indifference or wanton disregard for the Archibalds' rights, and an award of punitive damages is warranted in light of the Promoters' conduct.

WHEREFORE, Plaintiffs request that this Court enter judgment for Plaintiffs and against Defendant Marg and Myers for damages in an amount to be established by the evidence and in excess of $75,000; for pre- and post-judgment interest as provided by law; for punitive damages as provided by law; for Plaintiffs' costs and expenses incurred herein; and for any and all other relief that this Court deems just and proper.

## COUNT VI
(Aiding and Abetting the Promoters' Breach of Fiduciary Duty
against SkyTec Corporate, Network Referral Systems, and SkyTec Funding)

172. Plaintiffs restate and incorporate herein their allegations set forth in paragraphs 1 through 171.

173. As set forth elsewhere herein, the Promoters had fiduciary duties to the Archibalds and they breached those duties as set forth above.

174. SkyTec Corporate, Network Referral Systems, and SkyTec Funding knowingly and substantially assisted the Promoters' breach of fiduciary duties by assisting in the preparation, communication, and endorsement of untrue communications, including the False Representations and the Regional Business

Summary, to the Archibalds in support of the Promoters soliciting and embezzling the Archibalds' investment.

175.    Upon information and belief, the Promoters, SkyTec Corporate, Network Referral Systems, and SkyTec Funding shared offices at the same location, and also shared employees, secretaries, accountants, computers, software, e-mail servers, conference rooms, and marketing information, all in furtherance of the Promoters', SkyTec Corporate's, Network Referral Systems', and SkyTec Funding's collective business efforts.

176.    Upon information and belief, the Promoters' breaches of fiduciary duties were effectuated by using SkyTec Corporate's, Network Referral Systems', and SkyTec Funding's shared offices, employees, secretaries, accountants, computers, software, e-mail servers, conference rooms, and marketing information.

177.    SkyTec Corporate, Network Referral Systems, and SkyTec Funding also knowingly and substantially assisted the Promoters' breaches of fiduciary duties by benefitting from the Promoters solicitation of funds, as certain of those funds were received by SkyTec Corporate and, upon information and belief, were retained and shared among SkyTec Corporate, Network Referral Systems, and SkyTec Funding, either providing SkyTec Corporate an improved balance sheet or being used by SkyTec Corporate, Network Referral Systems, and SkyTec Funding to pay for their expenses.

178.    In fact, the Promoters have represented that SkyTec Corporate received an "undocumented loan" from SkyTec Texas.

179. The Promoters could not have effectuated their own breaches of fiduciary duties without SkyTec Corporate's, Network Referral Systems', and SkyTec Funding's cooperation and consent, along with SkyTec Corporate's, Network Referral Systems', and SkyTec Funding's assistance by making the numerous material misrepresentations and nondisclosures set forth elsewhere herein.

180. Moreover, at the time it provided substantial assistance to the Promoters' wrongful acts, SkyTec Corporate, Network Referral Systems, and SkyTec Funding were aware of the foregoing facts and their role in assisting in the Promoters' illegal and tortious activities.

WHEREFORE, Plaintiffs request that this Court enter judgment for Plaintiffs and against Defendants SkyTec Corporate, Network Referral Systems, and SkyTec Funding for damages in an amount to be established by the evidence and in excess of $75,000; for punitive damages which are fair and reasonable; for pre- and post-judgment interest as provided by law; for Plaintiffs' costs and expenses incurred herein including; and for any and all other relief that this Court deems just and proper.

## COUNT VII
### (Aiding and Abetting the Promoters' and SkyTec Corporate's Fraud against Network Referral Systems and SkyTec Funding)

181. Plaintiffs restate and incorporate herein their allegations set forth in paragraphs 1 through 180.

182. As set forth elsewhere herein, the Promoters and SkyTec Corporate perpetrated fraud against the Archibalds.

183.   Network Referral Systems and SkyTec Funding knowingly and substantially assisted the Promoters' and SkyTec Corporate's fraud by assisting in the preparation, communication, and endorsement of untrue communications, including the False Representations, the January 21, 2014 summary, and the Regional Business Summary, to the Archibalds in support of the Promoters and SkyTec Corporate soliciting and embezzling the Archibalds' investment.

184.   Upon information and belief, the Promoters, SkyTec Corporate, Network Referral Systems, and SkyTec Funding shared offices at the same location, and also shared employees, secretaries, accountants, computers, software, e-mail servers, conference rooms, and marketing information, all in furtherance of the Promoters', SkyTec Corporate's, Network Referral Systems', and SkyTec Funding's collective business efforts.

185.   Upon information and belief, the Promoters' and SkyTec Corporate's fraud was effectuated by using the Promoters', SkyTec Corporate's, Network Referral Systems', and SkyTec Funding's shared offices, employees, secretaries, accountants, computers, software, e-mail servers, conference rooms, and marketing information.

186.   Upon information and belief, Network Referral Systems and SkyTec Funding also knowingly and substantially assisted the Promoters' and SkyTec Corporate's fraud by benefitting from the Promoters' and SkyTec Corporate's solicitation of funds, as such funds, upon information and belief, were retained and shared among the Promoters, SkyTec Corporate, Network Referral Systems and SkyTec Funding to pay for expenses, and by keeping the Promoters and SkyTec

Corporate infused with cash allowing Network Referral Systems and SkyTec Funding to benefit from their business codependence with the Promoters and SkyTec Corporate.

187.   The Promoters and SkyTec Corporate could not have effectuated their fraud without Network Referral Systems' and SkyTec Funding's cooperation and consent, along with Network Referral Systems' and SkyTec Funding's assistance by endorsing the numerous material misrepresentations and nondisclosures set forth elsewhere herein.

188.   Moreover, at the time it provided substantial assistance to the Promoters' and SkyTec Corporate's wrongful acts, Network Referral Systems and SkyTec Funding were aware of the foregoing facts and their role in assisting in the Promoters' and SkyTec Corporate's illegal and tortious activities.

WHEREFORE, Plaintiffs request that this Court enter judgment for Plaintiffs and against Defendants Network Referral Systems and SkyTec Funding for damages in an amount to be established by the evidence and in excess of $75,000; for punitive damages which are fair and reasonable; for pre- and post-judgment interest as provided by law; for Plaintiffs' costs and expenses incurred herein; and for any and all other relief that this Court deems just and proper.

## COUNT VIII
(Conversion against the Promoters and SkyTec Corporate)

189.   Plaintiffs restate and incorporate herein their allegations set forth in paragraphs 1 through 188.

190.   As set forth elsewhere herein, the Promoters and SkyTec Corporate knowingly received investment funds from the Archibalds intended for SkyTec Texas.

191.   The Promoters and SkyTec Corporate were aware that SkyTec Texas did not exist.

192.   As such, the investment funds still belonged to the Archibalds.

193.   The Promoters and SkyTec Corporate took possession of the investment funds, intending to exercise control or rights of ownership over the funds.

194.   Specifically, the Promoters and SkyTec Corporate either used the funds to pay non-SkyTec Texas expenses or embezzled the funds.

195.   The Promoters and SkyTec Corporate thereby deprived the Archibalds of the right to possess the funds.

196.   As SkyTec Texas did not exist, the Archibalds had the exclusive right to possess the funds, and the Promoters and SkyTec Corporate have failed to return such possession.

197.   The Promoters and SkyTec Corporate were not authorized by the Archibalds to exercise control or rights of ownership over the funds.

198.   The Promoters' and SkyTec Corporate's actions were done with malice, reckless disregard or wanton indifference to the Archibalds' rights, thereby warranting an award of punitive damages in light of the Promoters' and SkyTec Corporate's actions.

WHEREFORE, Plaintiffs request that this Court enter judgment for Plaintiffs and against Defendant Marg, Myers, and SkyTec Corporate for damages in an

amount to be established by the evidence and in excess of $75,000; for pre- and post-judgment interest as provided by law; for punitive damages as provided by law; for Plaintiffs' costs and expenses incurred herein; and for any and all other relief that this Court deems just and proper.

## COUNT IX
(Aiding and Abetting the Promoters' and SkyTec Corporate's Conversion
against Network Referral Systems and SkyTec Funding)

199. Plaintiffs restate and incorporate herein their allegations set forth in paragraphs 1 through 198.

200. As set forth elsewhere herein, the Promoters and SkyTec Corporate converted the Archibalds' property to their own use and possession without the Archibalds' authorization, thereby causing injury to the Archibalds.

201. Network Referral Systems and SkyTec Funding knowingly and substantially assisted the Promoters' and SkyTec Corporate's conversion by assisting in the preparation, communication, and endorsement of untrue communications, including the False Representations, the January 21, 2014 summary, and the Regional Business Summary, to the Archibalds in support of the Promoters and SkyTec Corporate soliciting and embezzling the Archibalds' investment.

202. Upon information and belief, the Promoters, SkyTec Corporate, Network Referral Systems, and SkyTec Funding shared offices at the same location, and also shared employees, secretaries, accountants, computers, software, e-mail servers, conference rooms, and marketing information, all in furtherance of the

Promoters', SkyTec Corporate's, Network Referral Systems', and SkyTec Funding's collective business efforts.

203. Upon information and belief, the Promoters' and SkyTec Corporate's conversion was effectuated by using the Promoters', SkyTec Corporate's, Network Referral Systems', and SkyTec Funding's shared offices, employees, secretaries, accountants, computers, software, e-mail servers, conference rooms, and marketing information.

204. Upon information and belief, Network Referral Systems and SkyTec Funding also knowingly and substantially assisted the Promoters' and SkyTec Corporate's conversion by benefitting from the Promoters' and SkyTec Corporate's solicitation of funds, as such funds, upon information and belief, were retained and shared among the Promoters, SkyTec Corporate, Network Referral Systems, and SkyTec Funding to pay for expenses, and by keeping the Promoters and SkyTec Corporate infused with cash allowing Network Referral Systems and SkyTec Funding to benefit from their business codependence with the Promoters and SkyTec Corporate.

205. The Promoters and SkyTec Corporate could not have effectuated their conversion without Network Referral Systems' and SkyTec Funding's cooperation and consent, along with Network Referral Systems' and SkyTec Funding's assistance by endorsing the numerous material misrepresentations and nondisclosures set forth elsewhere herein.

206. Moreover, at the time it provided substantial assistance to the Promoters' and SkyTec Corporate's wrongful acts, the Network Referral Systems and SkyTec Funding were aware of the foregoing facts and their role in assisting in the Promoters' and SkyTec Corporate's illegal and tortious activities.

WHEREFORE, Plaintiffs request that this Court enter judgment for Plaintiffs and against Defendants Network Referral Systems and SkyTec Funding for damages in an amount to be established by the evidence and in excess of $75,000; for punitive damages which are fair and reasonable; for pre- and post-judgment interest as provided by law; for Plaintiffs' costs and expenses incurred herein; and for any and all other relief that this Court deems just and proper.

## COUNT X
(Civil Conspiracy against the Promoters and SkyTec Corporate)

207. Plaintiffs restate and incorporate herein their allegations set forth in paragraphs 1 through 206.

208. Marg, Myers, and SkyTec Corporate conspired with one another with the objective of unlawfully inducing investment in SkyTec Texas by new investors such as the Archibalds; and with the object to, among other things, commit fraud through the False Representations, convert the Archibalds' investment, breach fiduciary duties, and aid and abet each other's wrongful acts.

209. The Promoters and SkyTec Corporate reached a meeting of the minds on the objective of seeking to unlawfully induce the Archibalds to enter the Subscription Agreements and Sale Agreement and to invest in SkyTec Texas, an

43

entity which the Promoters and SkyTec Corporate fabricated for the guise of soliciting funds.

210.    As described more fully herein, the Promoters and SkyTec Corporate committed many acts in furtherance of the conspiracy, including, but not limited to, preparing communications and documents which asserted SkyTec Texas existed, preparing and disseminating the Regional Business Summary, soliciting and depositing funds intended for SkyTec Texas, accepted and deposited a check made out to SkyTec Texas, and converting and embezzling the Archibalds' investment.

211.    Upon information and belief, the Promoters and SkyTec Corporate also agreed upon their chosen course of action to accomplish their unlawful objective.

212.    The Promoters' and SkyTec Corporate's actions in furtherance of this conspiracy, as described above and elsewhere herein, have given rise to causes of action for fraudulent misrepresentation, negligent misrepresentation, fraud, conversion, breach of fiduciary duties, securities fraud pursuant to federal securities law, and securities fraud pursuant to Missouri securities law as elsewhere stated herein.

213.    As a result of the Promoters' and SkyTec Corporate's efforts in furtherance of the conspiracy, the Archibalds entered the Subscription Agreements and Sale Agreement and invested $117,371.00 in SkyTec Texas, a non-existent entity.

214.    As a result of the Promoters' and SkyTec Corporate's actions set out herein, the Archibalds have been damaged.

215. The Promoters' and SkyTec Corporate's actions were done with malice, reckless disregard or wanton indifference to the Archibalds' rights, thereby warranting an award of punitive damages in light of the Promoters' and SkyTec Corporate's actions.

WHEREFORE, Plaintiffs request that this Court enter judgment for Plaintiffs and against Defendants Marg, Myers, and SkyTec Corporate for damages in an amount to be established by the evidence and in excess of $75,000; for punitive damages which are fair and reasonable; for pre- and post-judgment interest as provided by law; for Plaintiffs' costs and expenses incurred herein; and for any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues in the above-entitled matter so triable.

Respectfully submitted,

DUGGAN SHADWICK DOERR & KURLBAUM LLC

By: /s/ John M. Duggan
John M. Duggan, #38415
Alexander J. Aggen, #68977
9101 W. 110th Street, Suite 200
Overland Park, Kansas 66210
(913) 498-3536
(913) 498-3538 (fax)
jduggan@dsdklaw.com
aaggen@dsdklaw.com
*Attorney for Plaintiffs*

VERIFICATION

STATE OF _Kansas_               )
                                )ss
COUNTY OF _Wyandotte_           )

The undersigned, Steven A. Archibald, being first duly sworn upon his oath, states that he has personal knowledge of the matters set forth in this Verified Complaint for Damages, and that all such matters are true and correct to the best of his knowledge and belief.

_Steven A. Archibald_
Steven A. Archibald

Subscribed and sworn to before me on the _16_ day of _May_, 2018.

_Sandra Crowley_
Notary Public

NOTARY PUBLIC-State of Kansas
SANDRA CROWLEY
My Appt. Exp. _1/9/20_

My commission expires:

_1/9/20_